**UNITED STATES of America, Appellee,**

v.

**David S. BOK, Defendant–Appellant.**

**Docket 97–1595.**

United States Court of Appeals, Second Circuit.

Argued Aug. 13, 1998.

Decided Sept. 8, 1998.

---

Jeremy H. Temkin, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney, Craig A. Stewart, Assistant United States Attorney), for Appellee.

John L. Pollok, Hoffman Pollok & Pickholz LLP, New York City, for Defendant–Appellant.

Before: CALABRESI, CABRANES, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge:

David S. Bok appeals from a conviction by a jury before Judge Koeltl for attempted income tax evasion in violation of 26 U.S.C. § 7201 and for making false statements on corporate income tax returns in violation of 26 U.S.C. § 7206(1). Bok's appeal raises several issues. First, he argues that the trial court erred in not instructing the jury that a distribution of money he received from a corporation in which he was the sole shareholder may have constituted a nontaxable return of capital. Bok also challenges the trial court's instruction to the jury on the materiality of the false statements he made on the corporate returns he signed. Third, Bok alleges that the trial court improperly admitted evidence of his not filing various state and federal tax returns—which were not at issue in the indictment—to prove intent under Rule 404(b) of the Federal Rules of Evidence. And finally, Bok contends the trial court's requirement that he contribute ten percent of his gross monthly income towards his outstanding personal tax liability as a condition of supervised release violates 28 U.S.C. § 3663.

Having considered these arguments, we affirm in all respects.

## BACKGROUND

Bok was in the construction contracting business in 1988 and 1989, during which time he was the president and sole shareholder of Abacus Construction Corp. Abacus had numerous clients both for commercial and residential projects, mostly in Manhattan. In the years before 1988, Bok had occupied a similar position with Abacus's predecessor corporation and, immediately before that, had attended and graduated from law school, having passed courses in both personal and corporate taxation.

Bok ran into trouble with the Internal Revenue Service in the early 1990s because he had not filed a personal income tax return for the 1988 tax year, and because Abacus had not filed corporate returns for 1988 and 1989. Responding to the IRS's requests, Bok eventually filed all three returns, in each case using the services of an accountant to prepare them. The accountant testified that he in turn had based his work on information provided by Bok. When Bok did file Abacus's corporate returns, there were significant discrepancies between Abacus's reported gross receipts and its actual gross receipts as suggested by a review of the company's bank statements. Similar discrepancies existed with respect to Bok's personal return for 1988, on which he had failed to include over $200,000 he had received from Abacus that year.

Specifically, for the 1988 tax year, a review of Abacus's bank statements indicated that the company had gross receipts of between $3.9 million and $4.8 million. Abacus's tax return for that year reflected gross receipts of just below $410,000. Similarly in 1989, Abacus's bank statements indicated gross receipts of just over $2 million, while its tax return reported slightly less than $405,000.

Bok's 1988 individual tax return listed his gross income as $58,154, only $16,700 of which derived from Abacus. During 1988, however, Bok used $202,765 of Abacus's assets to purchase a condominium in Manhattan, which Bok used as a personal residence.

Also in 1988, Bok used $20,122.22 of Abacus's funds to purchase municipal bonds in his own name. In neither case did Bok disclose to his accountant his appropriation of Abacus's funds, and his personal income tax return in no way reflected his appropriation of those funds.

Bok was indicted and tried on one count of attempted personal tax evasion and two counts of making false statements on an income tax return. A jury convicted him on all three counts, and the trial court sentenced him to thirty months' incarceration and three years' supervised release. In addition, as a condition of Bok's supervised release, the trial court required Bok's cooperation in calculating the amount of back taxes that he owed to the government and ordered that Bok pay ten percent of his gross monthly income towards his individual tax liability for 1988 (up to a total of $45,000). As outlined above and discussed in greater detail below, Bok challenges his conviction on several grounds. After considering Bok's arguments, we conclude that the trial court committed no error and therefore affirm.

## DISCUSSION

### I. *Jury Instructions*

Two discrete portions of Bok's jury instructions are before us on appeal. First, we must determine whether the trial court erred in not instructing the jury that the money Bok took from Abacus to pay for the condominium and municipal bonds may have been an untaxable return of capital. Second, we analyze whether the trial court improperly prevented the jury from deciding the materiality of Bok's misstatements on Abacus's corporate tax returns.

As an initial matter, "[a] jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Dinome*, 86 F.3d 277, 282 (2d Cir.1996) (internal quotation marks omitted). We review challenged jury instructions *de novo* but will reverse only if all of the instructions, taken as a whole, caused a defendant prejudice. *See United States v. Locascio*, 6 F.3d 924, 939 (2d Cir.1993) (citing

*United States v. Pujana–Mena,* 949 F.2d 24, 27 (2d Cir.1991)), *cert. denied,* 511 U.S. 1070, 114 S.Ct. 1645 (1994). With respect to both instructions, the government argues that Bok did not object to the court's actual charge and that therefore he may only challenge portions of it if the trial court's decisions amount to plain error under Rules 30 and 52(b) of the Federal Rules of Criminal Procedure. *See Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 1548, 137 L.Ed.2d 718 (1997). Bok admits that he did not object at the proper time to the materiality issue and that the plain error standard applies. He does not explicitly accept or deny the government's contention with respect to the instruction on calculation of his income. It is, however, not necessary in this case for us to determine whether to use plain error analysis or whether the usual harmless error standard applies because neither of the trial court's instructions was erroneous.

### A. *Return of Capital*

On the morning of the last day of the government's case, one day before the trial court submitted the case to the jury, Bok presented the court with several additional requests to charge. One of them concerned the treatment for tax purposes of money withdrawn by a shareholder from a corporation. Through that proposed charge, Bok sought to characterize the money he received from Abacus for his condominium and his municipal bonds as a nontaxable return of capital that he had invested in the corporation rather than as a taxable dividend. The proposed charge read as follows:

*Return of Capital Non–Income Transaction*

If a shareholder in a corporation withdraws his capital from that corporation, either all or part of that withdrawal is not income to the shareholder, and need not be reflected on that shareholder's personal income tax return. The same treatment occurs if the shareholder directs the corporation to pay to a third party for his benefit all or part of his capital contribution.

Defendant's Additional Requests to Charge at 2. The government opposed the use of the proposed charge, arguing both that it was not legally correct as written and that there was no basis in fact for its inclusion in the charge as a whole.

After entertaining arguments from both sides, the trial court decided against including Bok's proposed charge as written. The trial judge did invite Bok to work with the government to craft a more correct statement of the law, but the two sides evidently never reached agreement on an instruction. The trial judge went on to say that, in keeping with his obligation to instruct the jury correctly on the law, he had included a charge "about a corporate distribution and how that can be income." Trial Transcript at 963. Ultimately the relevant portion of the charge read as follows:

Gains or profits and income derived from any source whatever are included in gross income for the purpose of taxation of income. This includes both lawful and unlawful gains.

In order to prove that the defendant received substantial additional income omitted from his tax return, the government has introduced evidence that the defendant was the sole shareholder, or owner, of Abacus Construction Corp., a corporation, and received certain funds or assets from the corporation for the purchase of an apartment and a bond.

If you find that the defendant obtained such funds, or assets, or other property from Abacus Construction Corp., then you should proceed to determine whether this was income to the defendant.

In this connection, the question for you to determine is whether the defendant had control over the funds, or assets, or other property from that corporation, took it as his own and treated it as his own, so that as a practical matter he derived economic value from the funds, or assets, or other property received. If you find this to be the case, then the funds, or assets, or property received by the defendant would be income; if you do not find this to be the case, then the funds or assets or other

property obtained by the defendant would not be income to the defendant.

Trial Transcript at 1126–27.

■ We have long recognized that under certain circumstances monies lawfully withdrawn from a corporation by one of its shareholders may constitute a nontaxable return of capital. *See United States v. D'Agostino,* 145 F.3d 69, 72 (2d Cir.1998); *DiZenzo v. Commissioner,* 348 F.2d 122, 125 (2d Cir. 1965). A central condition for the application of the return of capital theory—which we have also called the "no earnings and profits, no income" rule—is that the corporation must not have earned a profit for the year in which the withdrawal was made. *See D'Agostino,* 145 F.3d at 72. Under this theory, if a shareholder has invested capital in a corporation and the corporation has not earned a profit for the year at issue, any monies the shareholder removes from the corporation (up to the amount of invested capital) constitute only a return of the shareholder's basis, not dividend income.

The return of capital theory derives from the Internal Revenue Code itself, which defines the term "dividend" to mean "any distribution of property made by a corporation to its shareholders ... *out of its earnings and profits of the taxable year,* ... without regard to the amount of the earnings and profits at the time the distribution was made." 26 U.S.C. § 316(a)(2) (1994) (emphasis added). The Code further provides that "[t]hat portion of the [corporate] distribution [of property to its shareholders] which is not a dividend shall be applied against and reduce the adjusted basis of the stock." 26 U.S.C. § 301(c)(2) (1994). The natural implication of the two provisions read together is that in the absence of earnings or profits, a shareholder may treat any distribution up to the value of capital invested in the corporation—that is, the taxpayer's basis—as a return of that capital. Both the Tax Court and the Tax Litigation Service of the IRS have explicitly adopted this approach in the civil enforcement context. *See Truesdell v. Commissioner,* 89 T.C. 1280, 1294–95, 1987 WL

258105 (1987); *Truesdell, action on decision,* 1988–025, 1988 AOD Lexis 22 (Sept. 12, 1988).

We have made clear that the return of capital theory applies equally in both criminal and civil cases, assuming that the diversion itself was not unlawful.[1] *See D'Agostino,* 145 F.3d at 72–73; *see also United States v. Leonard,* 524 F.2d 1076, 1083 (2d Cir.1975) (Friendly, J.) (recognizing the return of capital theory in a criminal tax prosecution but holding that the defendant failed to meet the burden of going forward as to the corporation's lack of earnings or profits), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976). In *D'Agostino,* we explicitly rejected the prevailing rule in several of our sister Circuits. *See* 145 F.3d at 72–73. These require only that the government prove that the taxpayer had "actual command" over the funds at issue in a criminal tax evasion case and do not require a showing that earnings and profits existed in a year in which the distribution was made. *See United States v. Williams,* 875 F.2d 846, 850–52 (11th Cir.1989); *United States v. Goldberg,* 330 F.2d 30, 38 (3d Cir.), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964); *Davis v. United States,* 226 F.2d 331, 335–36 (6th Cir.1955), *cert. denied,* 350 U.S. 965, 76 S.Ct. 432, 100 L.Ed. 838 (1956).

■ Similarly, in return of capital cases, a taxpayer's intent is not determinative in defining the taxpayer's conduct. That is, the taxpayer or the corporation need not have described the distribution at issue as a dividend or a return of capital at the time it was made; rather, the realities of the transaction—including the amount of the shareholder's basis and the corporation's earnings or profits, as well as the amount of the distribution—govern its characterization for tax purposes. *See D'Agostino,* 145 F.3d at 72–73. In this way, the court in *D'Agostino* applied the return of capital theory even though it had "little doubt the D'Agostinos acted with bad intentions" when Mrs. D'Agostino surreptitiously diverted up to $4,000 each week

---

**1.** Our opinion in *D'Agostino* made clear that "the 'no earnings and profits, no income' rule would not necessarily apply in a case of *unlawful* diversion, such as embezzlement, theft, a violation of corporate law, or an attempt to defraud third party creditors." 145 F.3d at 73.

in large bills from the couple's solely-owned businesses to her kitchen drawer.[2] *Id.* at 70, 73.

The fact that the return of capital theory applies in this Circuit does not, however, end our inquiry. We must also determine whether Bok established an adequate basis in the record for the proposed charge. The legal standard is generous: Generally "a criminal defendant is entitled to instructions relating to his theory of defense, for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court." *United States v. Dove,* 916 F.2d 41, 47 (2d Cir.1990), *quoted in United States v. Workman,* 80 F.3d 688, 702 (2d Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 319, 136 L.Ed.2d 233 (1996). On appeal, however, "[a] conviction will not be overturned for refusal to give a requested charge ... unless that instruction ... represents a theory of defense with basis in the record that would lead to acquittal." *United States v. Allen,* 127 F.3d 260, 265 (2d Cir. 1997) (quoting *United States v. Vasquez,* 82 F.3d 574, 577 (2d Cir.1996)) (internal quotation marks omitted). In determining whether an adequate basis exists for a return of capital charge, we must first determine the extent and nature of the showing the defendant must make.

Although our earlier cases have not stated it with perfect clarity, a defendant does always bear the burden of production—under which the defendant must make an initial showing on each key element of the theory—to receive an instruction on the return of capital theory. That is, there must be some credible evidence that the corporation did not enjoy income or profits for the tax year at issue, and that the amount of the taxpayer's capital contribution exceeded the amount of the distribution from the corporation. The court in *Leonard* effectively held as much:

> In prosecutions for income tax violations, production of a rather slight amount of evidence by the Government, here the proof of receipt of what are charitably characterized as constructive dividends rather than embezzled funds, may transfer the burden of going forward to the defendant. Although the ultimate burden of persuasion remains with the Government, Leonard did not introduce sufficient evidence of an absence of earnings or profits.... [3]

524 F.2d at 1083 (citations omitted). Though *Leonard* used precatory language in discussing the defendant's burden of production, it did not purport to do away with the general requirement that a proposed jury instruction must have an adequate basis in fact. To the extent that *Leonard* was at all unclear on the issue, we now clarify that in order to merit a charge on the return of capital theory, a defendant must satisfy a burden of production by showing that an adequate basis in fact exists for the charge. As suggested by the cases cited in *Leonard,* 524 F.2d at 1083, this is not the only circumstance in which a taxpayer faces a burden of production once the government has come forward with evidence of tax evasion. *See, e.g., United States v. Vardine,* 305 F.2d 60, 63 (2d Cir.1962) ("[I]t is reasonable to require the defendant, if he wishes to disprove intent and likely source [of a net worth bulge], to bear the burden of going forward when he alleges that he had additional deductions not claimed on his income tax return."). Of course in cases involving the return of capital theory, the allocation of the burden of going forward to the taxpayer does not affect the ultimate burden of persuasion, which always remains with the government. *See Leonard,* 524 F.2d at 1083.

Like the taxpayer in *Leonard,* Bok failed to satisfy his burden of going forward

**2.** In not finding intent to be determinative, this Circuit has also followed a different path from at least one of our sister Circuits. *See United States v. Miller,* 545 F.2d 1204, 1215 (9th Cir.1976) (permitting taxpayers to apply the return of capital theory only when there has been "some demonstration on the part of the taxpayer and/or the corporation that such distributions were intend-

ed to be such a return"), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977).

**3.** Transferring the burden of production to the taxpayer is consistent with the burden allocation in *DiZenzo,* a civil case, under which the taxpayer faces burdens of both production and proof. *See* 348 F.2d at 126–27.

and therefore did not establish an adequate basis in the record for his proposed instruction. Specifically, neither Bok nor the government produced any admissible evidence to suggest that Abacus lacked earnings or profits for 1988. Although Bok did introduce Abacus's 1988 financial statements, he made clear that they were offered only to show Bok's state of mind when he gave information to his accountant, not for the underlying truth of the figures in the statements. Even if the financial statements had been admitted for their truth, they alone would not have satisfied Bok's burden because they were based entirely on information provided by Bok, purportedly using an entirely different method of accounting than that used on Abacus's corporate return.[4] In addition, Bok had suggested that Abacus *did* have net earnings for 1988. During the IRS's investigation, Bok accounted for the low figures in the gross receipts portion of Abacus's return by explaining that he had mistakenly entered the corporation's net profits in place of its gross receipts. At trial Bok referred to this explanation for the false statements on Abacus's returns in arguing that he lacked the requisite intent to be convicted. Bok continues to make the same argument on appeal, noting his contention that the numbers on the gross receipts line of Abacus's tax returns "were really net profits." Brief for Defendant–Appellant David S. Bok at 36. Finally, Bok declined the trial court's invitation to elicit facts to support his proposed charge. Because Bok's accountant had not been qualified as an expert witness, the trial court rejected Bok's attempt to establish through the cross examination of the accountant that, as a matter of law, a return of capital was a nontaxable event. In doing so, however, the trial court expressly suggested that Bok use the witness to develop facts that Bok might later use as the basis for a jury instruction; Bok did not follow up on the trial court's suggestion.

Thus, despite our generous approach to jury instructions, under which the defendant is entitled to an instruction on his theory when "there is some foundation in the proof, no matter how tenuous," *Dove*, 916 F.2d at 47, Bok did not provide sufficient facts to warrant his proposed charge. Given the lack of evidence produced by Bok on the issue of Abacus's earnings or profits, we cannot say the trial judge erred in finding no basis in the record for the return of capital theory. Because Bok failed to satisfy his burden of production, the trial court properly rejected Bok's proposed instruction.

### B. *Materiality of False Statements*

■ Bok also argues that the trial court erred in not permitting the jury to decide whether the false statements Bok made on Abacus's corporate returns were material. In doing so, he appears to argue that *United States v. Klausner*, 80 F.3d 55, 60 (2d Cir. 1996), which permitted a trial judge to decide issues of materiality in a § 7206 case, is wrongly decided under *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). *Gaudin* affirmed the Ninth Circuit's reversal of a conviction under 18 U.S.C. § 1001 because the trial court had not submitted the question of materiality to the jury. Because the trial court *did* submit the question of materiality to the jury in this case, it is not necessary for us to examine or apply *Klausner*.

It is abundantly clear that the trial judge allowed the jury to decide the issue of materiality, even though *Klausner* did not explicitly require him to do so. The court charged the jury in pertinent part as follows:

> ... [T]he third element the government must prove beyond a reasonable doubt is that the return at issue in the count you are considering was not true and correct as to every material matter....
>
> In relation to whether statements on a document are incorrect as to a material matter, a line on a tax return is a material matter if the information required to be reported on that line is capable of influenc-

---

4. The accountant's letter accompanying the financial statements makes their limitations clear, explaining that the statements are "compilation[s] ... limited to presenting in the form of financial statements information that is the representation of management. [The accounting firm] ha[s] not audit[ed] or reviewed the accompanying financial statements and, accordingly, do[es] not express an opinion or any other form of assurance on them."

ing or impeding the IRS in verifying or auditing the return. In other words, the test of materiality in this case is whether the information required to be reported on the tax return in question was necessary for the proper evaluation of the accuracy of the tax return....

... [I]f you find beyond a reasonable doubt that gross receipts were understated in such a way as to influence or impede the IRS in verifying and auditing the return, then you should conclude that the return was not true and correct as to all material matters....

Trial Transcript at 1135–36. Thus, in his instructions, the trial judge did nothing more than define "material" for the jury, an action which is entirely permissible under *Gaudin*. *See* 515 U.S. at 513, 115 S.Ct. 2310. If the jury had found that the statements were false but would not "influence or impede" the IRS in its evaluation of the returns, the jury would have been free to acquit because the false statements were not material.

Because the trial judge left the question of materiality to the jury, he committed no error in his instruction on that issue.

## II. *Similar Acts*

■ Also at issue is one of the trial judge's evidentiary rulings. Over Bok's objection, the government introduced evidence at trial of other similar acts by Bok, specifically his failure to file a state personal tax return for 1988 as well as the failure of Abacus and its predecessor corporation to file federal and state corporate returns for the years during and after those in the indictment. On appeal we must decide whether such evidence of similar acts was admissible to prove Bok's knowledge and intent, and whether the trial court properly admitted such evidence in the government's case in chief on the assumption that the defendant would argue that he lacked the requisite intent for conviction. District courts enjoy broad discretion in admitting evidence of similar acts; to find an abuse of that discretion "we must be persuaded that the trial judge ruled in an arbitrary and irrational fashion." *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir.), *cert. denied*, —— U.S. ——,

117 S.Ct. 183, 136 L.Ed.2d 122 (1996). We hold that the trial judge did not abuse his discretion here, and therefore the admission of this similar act evidence in the government's case in chief was permissible.

■ Rule 404(b) of the Federal Rules of Evidence governs the admissibility of evidence on "[o]ther crimes, wrongs, or acts," permitting its admission for purposes including "proof of ... intent [or] knowledge" while prohibiting its admission "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b); *accord United States v. Germosen*, 139 F.3d 120, 127 (2d Cir.1998). "We take an 'inclusive approach' to 'other acts' evidence: it can be admitted 'for any purpose except to show criminal propensity,' unless the trial judge concludes that its probative value is substantially outweighed by its potential for unfair prejudice." *Germosen*, 139 F.3d at 127 (internal citation omitted) (quoting *United States v. Stevens*, 83 F.3d 60, 68 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 255, 136 L.Ed.2d 181 (1996)).

■ Both § 7201 and § 7206(1) require that the government prove that the defendant acted willfully. And the Supreme Court has made clear that in order to avoid snaring people in the tangled net of the tax code solely due to their incompetence, willfulness under the tax laws requires " 'a voluntary, intentional violation of a known legal duty.' " *Cheek v. United States*, 498 U.S. 192, 200–01, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (quoting *United States v. Bishop*, 412 U.S. 346, 360, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973)); *see also Klausner*, 80 F.3d at 62–63. As we have often explained, a defendant's past taxpaying record is admissible to prove willfulness circumstantially. *See, e.g., Klausner*, 80 F.3d at 63 (holding that failure to file income tax returns and underestimating tax liability for purposes of estimated payments for the tax years at issue constituted evidence of willfulness); *United States v. Ebner*, 782 F.2d 1120, 1126 n. 7 (2d Cir.1986) ("The jury may consider evidence of intent to evade taxes in one year as evidence of intent to evade payment in prior or subsequent years."); *United States v. Magnus*, 365 F.2d 1007, 1011 (2d Cir.1966) ("[P]rior taxpaying

history, both federal and state, was probative of [taxpayer']s wilfulness in failing to pay substantial amounts of federal taxes in [the years at issue.]"), *cert. denied*, 386 U.S. 909, 87 S.Ct. 856, 17 L.Ed.2d 783 (1967). As a simple matter of logic, Bok's failure to file state or federal returns for either himself or his corporations until told to do so by the IRS is indicative of an intent to evade the tax system. This is particularly true in light of Bok's legal education, which included coursework in both corporate and personal taxation.

Although it is generally the favored practice for the trial court to require the government to wait before putting on its similar act evidence until the defendant has shown that he will contest the issue of intent, *see United States v. Colon*, 880 F.2d 650, 660 (2d Cir. 1989), "such evidence is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue," *United States v. Inserra*, 34 F.3d 83, 90 (2d Cir.1994); *accord United States v. Zackson*, 12 F.3d 1178, 1183 (2d Cir.1993), *cert. denied*, 512 U.S. 1224, 114 S.Ct. 2717, 129 L.Ed.2d 842 (1994). In this case, before the admission of the evidence, Bok had proposed instructions that concerned intent, and in Bok's cross examination of his accountant, Bok had suggested that his reliance on the accountant effectively negated his willfulness. The trial court was therefore well within its discretion in allowing the introduction of evidence of similar acts when it did.

### III. *Sentencing*

■■■■ Finally, we must consider whether the trial judge exceeded his authority by requiring Bok to pay ten percent of his gross monthly income—up to $45,000 in total—against his 1988 personal tax liability as a condition of his term of supervised release.[5] Bok argues that this condition is effectively an order of restitution and therefore not permitted except when provided by statute. The dispute centers around how to harmonize 18 U.S.C. §§ 3563(b)(2), 3583(d), and 3663, which provide when a court may order restitution, with this Circuit's most extensive

interpretation of any of those statutes in the tax context, *United States v. Gottesman*, 122 F.3d 150 (2d Cir.1997). We hold that a natural reading of the statutes permits the trial court's order here, and that *Gottesman* does not require a different result.

■■■■ It is well-established that a federal court may not order restitution except when authorized by statute. *See United States v. Helmsley*, 941 F.2d 71, 101 (2d Cir.1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992). Section 3663(a) provides that a district court generally may order restitution as part of a sentence itself when the defendant is convicted of a specified collection of statutes; that collection, however, does not include either of the statutes Bok violated here. *See* 18 U.S.C. § 3663(a)(1)(A) (Supp. II 1996). In addition to § 3663, § 3583(d) governs orders of restitution within the context of supervised release, detailing the required and permissible conditions of restitution in that context. It provides that "[t]he court may order, as a further condition of supervised release, to the extent [certain factors not relevant here are met,] any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) ... and any other condition it considers to be appropriate." 18 U.S.C. § 3583(d) (1994). Among the discretionary conditions of probation referred to in § 3563(b) is the requirement that the defendant "make restitution to a victim of the offense ... (*but not subject to the limitation of section 3663(a)* ... )." 18 U.S.C. § 3563(b)(2) (Supp. II 1996) (emphasis added). Thus a plain reading of §§ 3583(d) and 3563(b) permits a judge to award restitution as a condition of supervised release *without regard to the limitations in § 3663(a)*.

The Sentencing Guidelines of 1990, which were in effect at the time Bok committed his crimes, provide additional support for the conclusion we find to be suggested by the statutes. Section 5E1.1(a) specifically authorized a trial court to order restitution as a condition of supervised release in all cases, without reference to the limitations in § 3663(a). *See* U.S. Sentencing Guidelines

---

5. Although Bok challenged the trial judge's authority to make *any* restitution order, he did not challenge the reasonableness of the actual order itself.

Manual § 5E1.1(a) (1990). Revisions to the Guidelines have been even clearer, requiring the trial judge to order restitution as a condition of supervised release or probation where restitution would be available under § 3663(a) but for the fact that the offense is not within the category of offenses listed in the statute. *See id.* § 5E1.1(a)(2) (1997).

Our opinion in *Gottesman* does not require a different result. *Gottesman* rejected a court's order of restitution, payable upon the defendant's completion of supervised release, but did so primarily because the trial court ignored a provision in Gottesman's plea agreement, which provided that the defendant would pay his past taxes "on such terms and conditions as will be agreed upon between ... Gottesman and the IRS." 122 F.3d at 150. The opinion focuses entirely on the requirements of § 3663(a)(3)—the provision concerning the treatment of restitution in the plea bargaining context—and the proper deference towards and interpretation of plea agreements. *See id.* at 151–53.[6]

Outside the context of plea bargaining, which raises unique concerns about a defendant's expectations regarding sentencing, we see no reason to depart from the clear meaning of § 3583(d) and § 3563(b) and therefore hold that the trial judge permissibly ordered Bok to pay restitution as a condition of supervised release.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of conviction entered in the District Court, and we affirm the District Court's order that as a condition of his supervised release, Bok must pay ten percent of his gross monthly salary, up to $45,000, towards his personal tax liability.

---

**6.** *Gottesman* also refers to a Fifth Circuit case, *United States v. Stout*, 32 F.3d 901 (5th Cir.1994), which treated a trial court's order of restitution as a condition of supervised release in a tax evasion case. *See Gottesman*, 122 F.3d at 152. Like *Gottesman, Stout* involved a plea agreement, and the Fifth Circuit's reasoning depended on the trial court's interpretation of that agreement. *See Stout*, 32 F.3d at 904–05. That reasoning is therefore not applicable here.