*United States v. Jimenez*

In the

# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2023

ARGUED: SEPTEMBER 21, 2023
DECIDED: MARCH 15, 2024

No. 22-2090

UNITED STATES OF AMERICA,
*Appellee*,

*v.*

ARIEL JIMENEZ, AKA SEALED DEFENDANT
*Defendant-Appellant*,

*v.*

IRELINE NUNEZ, ANA YESSENIA JIMENEZ, EVELIN JIMENEZ, LEYVI
CASTILLO, CINTHIA FEDERO, GUILLERMO ARIAS MONCION, MARCOS
DE JESUS PANTALEON, AKA JUNIOR, JOSE CASTILLO, AKA JAIRO,
*Defendants*.

————

Appeal from the United States District Court
for the Southern District of New York.

————

Before: WALKER, CHIN, AND NATHAN, *Circuit Judges*.

————

Defendant-Appellant Ariel Jimenez was convicted following a jury trial of conspiracy to defraud the United States with respect to tax-return claims, conspiracy to commit wire fraud, aggravated identity theft, and money laundering. On appeal, Jimenez argues that (1) the district court's jury instruction regarding withdrawal from a conspiracy was erroneous, and (2) the evidence supporting his conspiracy convictions was insufficient. For the reasons explained below, we AFFIRM the judgment of conviction.

————

CRAIG A. WENNER (John T. Zach, *on the brief*), Boies Schiller Flexner LLP, New York, NY, *for Defendant-Appellant Ariel Jimenez*.

DANIEL G. NESSIM (Ni Qian, Olga I. Zverovich, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee the United States of America*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Defendant-Appellant Ariel Jimenez was convicted following a jury trial of conspiracy to defraud the United States with respect to tax-return claims, conspiracy to commit wire fraud, aggravated identity theft, and money laundering. On appeal, Jimenez argues that (1) the district court's jury instruction regarding withdrawal from a conspiracy was erroneous, and (2) the evidence supporting his conspiracy convictions was insufficient. For the reasons explained below, we AFFIRM the judgment of conviction.

## BACKGROUND

Defendant-Appellant Ariel Jimenez owned and operated a tax preparation business in the Bronx, which assisted individuals with filing tax returns. The evidence at trial, taken in the light most favorable to the government (as we must do on this appeal), revealed that between 2009 and 2015, Jimenez spearheaded a large-scale tax fraud and identity theft scheme. Jimenez and his employees purchased stolen identities of children and sold them to clients, who claimed the children as false dependents on their tax returns to receive valuable tax benefits. Through this scheme, Jimenez obtained millions of dollars, some of which he laundered by structuring bank deposits, investing in real estate properties, and then transferring the properties to his parents and limited liability companies.

On September 9, 2021, the government filed a superseding indictment charging Jimenez with conspiracy to defraud the United States by obtaining the payment of a false claim, in violation of 18 U.S.C. § 286 (Count One); conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count Two); aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1)&(b) and (2) (Count Three); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (2) (Count Four). For purposes of the statute of limitations, Counts One through Three related back to the original indictment, which was filed on December 12, 2018.

At trial for the charges contained in the superseding indictment, the government presented testimonial evidence from two cooperating witnesses who participated in the conspiracy: Ireline Nunez, Jimenez's ex-wife and former manager of his tax business, and Elvy Jimenez, an employee who worked for Jimenez between

2009 and 2013 before leaving to start a competing tax preparation business, which also engaged in tax fraud and identity theft.[1]  Clients who paid for false dependents also testified at trial, as did several victims of the identity theft.   The government offered various documentary evidence that corroborated the testimony, including lists of stolen identities used by Jimenez and his employees, fraudulent tax returns they filed, inculpatory letters written by Jimenez, and records showing how Jimenez spent and laundered proceeds.

At the conclusion of the government's case, the defense moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, arguing that the applicable five-year statute of limitations required acquittal because Jimenez withdrew from the conspiracy more than five years before the original indictment was filed.  The district court denied the Rule 29 motion subject to renewal after the jury's verdict.  The defense did not call any witnesses.  In its closing statement to the jury, the defense again argued, among other things, that Jimenez withdrew from the conspiracy before the statute of limitations began to run.

In advance of the charge conference, Jimenez requested that the district court instruct the jury on the defense of withdrawal from a conspiracy, and the parties then litigated the language of the instruction.   The government requested an instruction that to effectively withdraw from a conspiracy, "the defendant must not take any subsequent acts to promote the conspiracy or receive any additional benefits from the conspiracy."   Supp. App'x 294 (citing

---

[1] Elvy Jimenez has no familial relation to Defendant-Appellant Ariel Jimenez. Herein, we refer to Ariel Jimenez as either "Ariel Jimenez" or "Jimenez."  We refer to Elvy Jimenez exclusively as "Elvy Jimenez."

*United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008)).  The defense requested that the district court replace the word "or" with "and," *see id.* at 294–99, arguing that a showing of *both* continued acts in furtherance of the conspiracy *and* continued benefits from the conspiracy was necessary to render a defendant's withdrawal ineffective.  App'x 118–19.  The district court disagreed with the defense and settled on the following formulation, which it instructed to the jury: "[A defendant] must not take any subsequent steps to promote the conspiracy, nor receive additional benefits from the conspiracy in order to effectively withdraw from the conspiracy." Supp. App'x 356.

In February 2022, the jury found Jimenez guilty on all counts. Jimenez subsequently moved for a judgment of acquittal or for a new trial under Rules 29 and 33 of the Federal Rules of Criminal Procedure.  Jimenez argued there was insufficient evidence (a) that he continued to participate in the conspiracy after his claimed withdrawal, (b) that he committed aggravated identity theft during the limitations period, and (c) that he laundered money at any time. The district court denied Jimenez's post-trial motions, determining that there was sufficient evidence to sustain his conviction on all counts.

In September 2022, the district court sentenced Jimenez to 144 months' imprisonment and three years' supervised release.  The district court further ordered Jimenez to forfeit over $14 million and his interest in three properties, and to pay over $44 million in restitution and $400 as a mandatory special assessment.  This appeal followed.

**DISCUSSION**

On appeal, Jimenez argues that (1) the district court's jury instruction on withdrawal from a conspiracy was erroneous, and that (2) the district court erred in denying his Rule 29 motion for acquittal because the evidence supporting his conspiracy convictions was insufficient. For the reasons set forth below, we reject both arguments.

I.    **Jury Instruction**

Jimenez challenges the district court's jury instruction that to effectively withdraw from a conspiracy, "[a defendant] must not take any subsequent steps to promote the conspiracy, nor receive additional benefits from the conspiracy." Supp. App'x 356. On appeal, he argues that the district court erred in using the word "nor" instead of "and," which the defense had requested at trial, because the resulting instruction misstated the law on withdrawal from a conspiracy.

We review preserved challenges to jury instructions *de novo*, but "will reverse only if all of the instructions, taken as a whole, caused a defendant prejudice." *United States v. Applins*, 637 F.3d 59, 72 (2d Cir. 2011) (quoting *United States v. Bok*, 156 F.3d 157, 160 (2d Cir. 1998)). "A 'jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law.'" *Id.* (quoting *Bok*, 156 F.3d at 160). "The defendant bears the burden of showing that [his] requested instruction accurately represented the law in every respect and that, viewing as a whole the charge actually given, he was prejudiced." *Id.* (quoting *United States v. Nektalov*, 461 F.3d 309, 313–14 (2d Cir. 2006) (alteration incorporated)).

"Conspiracy is generally a continuing crime . . . not complete until the purposes of the conspiracy have been accomplished or abandoned." *United States v. Eppolito*, 543 F.3d 25, 47 (2d Cir. 2008) (internal quotation marks and citations omitted). If the government establishes that a conspiracy continued into the statute of limitations period, which for a conspiracy charge is five years, *see* 18 U.S.C. § 3282(a), a defendant can assert as an affirmative defense to the charge that he withdrew from the conspiracy before the start of the limitations period. *See Eppolito*, 543 F.3d at 48–49.

In *United States v. Berger*, we held that "resignation from a criminal enterprise, standing alone, does not constitute withdrawal as a matter of law; more is required. Specifically, the defendant must not take any subsequent acts to promote the conspiracy . . . and must not receive any additional benefits from the conspiracy." 224 F.3d 107, 118 (2d Cir. 2000) (citations omitted). In *Eppolito*, we reaffirmed that "'the defendant must not take any subsequent acts to promote the conspiracy' or 'receive any additional benefits from the conspiracy.'" 543 F.3d at 49 (quoting *Berger*, 224 F.3d at 118).

Jimenez fails to meet his burden of establishing error because the district court's jury instruction regarding withdrawal from a conspiracy was a correct statement of the law. Despite its slightly different phrasing, the district court's instruction—that to effectively withdraw from a conspiracy, a defendant "must not take any subsequent steps to promote the conspiracy, nor receive additional benefits from the conspiracy," Supp. App'x 356—is equivalent in meaning to the rule stated in *Berger* and *Eppolito*.

Jimenez argues that the district court should have used "and" instead of "nor" in its jury instruction because *Berger* sets forth a

conjunctive standard for defeating a defendant's withdrawal defense. In Jimenez's view, a defendant's withdrawal is ineffective only if the defendant both "'continues to do acts in furtherance of the conspiracy' AND 'continues to receive benefits from the conspiracy's operations.'" App'x 118–19. However, the *Berger* standard is in the disjunctive: a showing of either action is sufficient to defeat a defendant's alleged withdrawal. This conclusion follows from the language of *Berger*. If a defendant "must not take any subsequent acts to promote the conspiracy . . . *and* must not receive any additional benefits from the conspiracy" to effectively withdraw from it, *see Berger*, 224 F.3d at 118 (emphasis added), then a defendant who carries out *either* action has not effectively withdrawn. Stated simply, effective withdrawal requires both actions. The facts of *Berger* also confirm this standard. In that case, we considered whether, assuming that the defendant had resigned from a conspiracy, he had nonetheless failed to fully withdraw from it. In rejecting the defendant's withdrawal defense, we noted only that his post-resignation lies to law enforcement agents about the conspiracy helped to conceal it from investigators, without mentioning whether he continued to receive additional benefits from the conspiracy after his resignation. *See Berger*, 224 F.3d at 119.

Jimenez further contends that *Berger*, *Eppolito*, and the district court in this case all stated the law on withdrawal differently because the conjunctions "and," "or," and "nor" convey different meanings. This argument also misses the mark. In the context of conspiracy withdrawal, stating that a defendant must not promote the conspiracy "and" must not benefit from it, *see Berger*, 224 F.3d at 118, is the same as stating that a defendant must not promote the conspiracy "nor" benefit from it, as the district court here instructed,

8

*see* Supp. App'x 356. This principle is known as one of De Morgan's Laws, which explain as a matter of propositional logic that "not *X* and not *Y*" is equivalent to "not (*X* or *Y*)." *See, e.g., Schane v. Int'l Bhd. of Teamsters Union Loc. No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 589 (7th Cir. 2014); *DaVita Inc. v. Va. Mason Mem'l Hosp.*, 981 F.3d 679, 690 (9th Cir. 2020). This principle applies here. While *Berger* used the word "and," *Eppolito* used the word "or," and the district court here used the word "nor," all three formulations plainly convey the same rule: that withdrawal from a conspiracy is ineffective if a defendant either continues to promote the conspiracy or continues to benefit from it. That rule makes sense: if a defendant continues to promote a conspiracy or if he continues to benefit from it, he has not genuinely withdrawn.

In sum, the district court accurately stated the law when it instructed the jury that "[a defendant] must not take any subsequent steps to promote the conspiracy, nor receive additional benefits from the conspiracy in order to effectively withdraw from the conspiracy." Supp. App'x 356. Therefore, we reject Jimenez's argument that the district court's jury instruction on withdrawal from a conspiracy was erroneous.

## II. Sufficiency of the Evidence

Apart from his challenge to the jury instruction, Jimenez challenges the evidence supporting his conspiracy convictions on two grounds: that the evidence was insufficient to establish the elements of conspiracy, and that the evidence showed he ceased to participate in the conspiracy more than five years before the initial indictment.[2]

---

[2] In a footnote, Jimenez argues that if we accept his claim that insufficient evidence

We review preserved challenges to the sufficiency of the evidence *de novo* and unpreserved challenges for plain error. *See United States v. Vernace*, 811 F.3d 609, 615 (2d Cir. 2016) (preserved challenge); *United States v. Draper*, 553 F.3d 174, 179 (2d Cir. 2009) (unpreserved challenge). In assessing the sufficiency of the evidence, we "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Babilonia*, 854 F.3d 163, 174 (2d Cir. 2017) (quoting *United States v. Rosemond*, 841 F.3d 95, 113 (2d Cir. 2016)). "We must affirm if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Rosemond*, 841 F.3d at 113).

## A.     Evidence of the Conspiracy

Jimenez first argues that the government's evidence was insufficient to establish the elements of conspiracy because it failed to show an agreement between him and his employees to defraud the United States or commit wire fraud. Because Jimenez did not challenge the sufficiency of the evidence on this basis in the district court, the claim is reviewable only for plain error. Here, we find no error, much less plain error.

"To prove conspiracy, the government must show that two or more persons entered into a joint enterprise for an unlawful purpose,

---

established his involvement in the conspiracy, then we "should necessarily acquit [him] of the money laundering charges as well, since it was the purportedly illicit proceeds of the conspiracy that [he] was accused of laundering." Def. Br. 43 n.1. We need not reach this argument because, as explained below, we reject his challenges to the sufficiency of the evidence.

with awareness of its general nature and extent," and that those persons "agreed to participate in what [they] knew to be a collective venture directed toward a common goal." *United States v. Khalupsky*, 5 F.4th 279, 288 (2d Cir. 2021) (internal quotation marks and citations omitted). But the government need not prove "that the defendant knew all of the details of the conspiracy" or "the identities of all of the other conspirators." *Id.* (internal quotation marks and citation omitted).

Viewing the evidence presented at trial in the light most favorable to the government, a rational trier of fact could have easily found beyond a reasonable doubt that Jimenez conspired to commit fraud. The government introduced copious evidence that Jimenez agreed to participate in and indeed led the charged conspiracy. To begin, Jimenez's ex-wife Ireline Nunez and his ex-employee Elvy Jimenez both gave accounts of Jimenez's role as the leader and organizer of the tax fraud and identity theft scheme. For example, Nunez testified that Jimenez asked her to join the scheme and instructed her how to add false dependents to tax returns, and that Jimenez was responsible for purchasing the lists of stolen identities that the business used to generate false dependents. Elvy Jimenez testified that Jimenez was the boss and leader of the business, that Jimenez and his employees prepared tax returns with false dependents, and that Jimenez received most of the profit from the illegal scheme. One of the clients who served as a government witness, Brigido Abreu, also spoke to his personal interactions with Jimenez. Abreu testified that he paid Jimenez to prepare his 2011 and 2012 tax returns with false dependents. These first-hand accounts were corroborated by documentary evidence, such as sign-in sheets indicating that Jimenez met with clients, a list in Jimenez's

handwriting recording the number of false dependents purchased by various clients, and financial records showing that Jimenez signed checks to the business's supplier of stolen identities.

Jimenez argues that the majority of the government's witnesses—for example, the victims of identity theft and several law enforcement officers whom the government called to summarize records and present calculations—did not have first-hand knowledge of Jimenez entering into any agreement with co-conspirators to commit tax fraud.  Jimenez acknowledges, however, that other evidence *did* directly implicate him in the conspiracy—for example, the testimony of Ireline Nunez, Elvy Jimenez, and Brigido Abreu—but he argues that this evidence "was discredited and should not be given substantial weight."  Def. Br. 55.  In particular, Jimenez contends that these witnesses had motives to lie or exaggerate and that they each gave testimony that was contradicted by other evidence at trial.

But Jimenez made these arguments to the jury, which rejected them in reaching a guilty verdict.  We must "defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Landesman*, 17 F.4th 298, 320 (2d Cir. 2021) (quoting *United States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019)).  Moreover, "[t]his high degree of deference we afford to a jury verdict is especially important when reviewing a conviction of conspiracy . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel."  *Id.* (internal quotation marks and citations omitted).

In sum, because the government introduced substantial evidence that Jimenez engineered the charged conspiracy and directed his employees to participate in it, we reject his argument that the evidence was insufficient to establish an agreement to defraud the United States or commit wire fraud.

### B.      Withdrawal from the Conspiracy

Jimenez additionally contends that the district court erred in denying his Rule 29 motion because the evidence established that he ceased to participate in the conspiracy more than five years before his initial indictment, which in turn renders the government's evidence of conspiracy insufficient.  This second challenge to the sufficiency of the evidence, which we review *de novo* because Jimenez raised it in the district court, fares no better than the first.

"[W]ithdrawal from a conspiracy is an affirmative defense which the defendant must prove by a preponderance of the evidence."  *United States v. Hamilton*, 538 F.3d 162, 173 (2d Cir. 2008).  As described above, to effectively withdraw from a conspiracy, "the defendant must not take any subsequent acts to promote the conspiracy . . . and must not receive any additional benefits from the conspiracy."  *Berger*, 224 F.3d at 118 (citations omitted).  Here, the initial indictment charging Jimenez with two counts of conspiracy was filed on December 12, 2018.  Therefore, to succeed on his statute of limitations defense, Jimenez had the burden of proving that he withdrew from the conspiracy prior to December 12, 2013.

Jimenez argues that he met his burden of proving withdrawal based on testimony given by Elvy Jimenez at trial.  According to Elvy, "around the summer of 2012," Jimenez ordered his two sisters to burn the lists of stolen identities.  Supp. App'x 101.  Then, at the beginning

of the tax season in 2013, Jimenez told the employees of his tax business not to work with the lists anymore. Based on these statements, the defense argued during and after trial that he should be acquitted. The jury rejected the defense's withdrawal argument in reaching its verdict, as did the district court in denying Jimenez's post-trial motions. The district court reasoned that "there manifestly was enough evidence presented at trial for a reasonable juror to find Jimenez guilty beyond a reasonable doubt" because "[a]ny evidence that Jimenez withdrew from the conspiracy is rebutted by evidence that he did not, and there is strong evidence that he continued to benefit from the conspiracy well into 2015." Sp. App'x 4. Viewing the evidence in the light most favorable to the government, we agree.

As a threshold matter, the government presented sufficient evidence that the tax fraud and identity theft scheme continued well beyond 2012 and 2013, when Jimenez allegedly ordered the lists of stolen identities to be burned and retired from use. For instance, Elvy Jimenez testified that notwithstanding Jimenez's statements in 2012 and 2013, "[n]othing changed," and Jimenez's tax business continued using the lists to claim false dependents for their clients. Supp. App'x 101. The government also introduced evidence of fraudulent 2013 tax returns prepared and filed by Jimenez's tax business in 2014. Moreover, the government presented evidence that Jimenez personally continued to participate in the conspiracy after his claimed withdrawal. To begin, Jimenez remained the owner and operator of the tax business, where fraudulent tax returns continued to be filed. And Ireline Nunez testified that in 2015, after the government searched the business's office, Jimenez left the country to live in the Dominican Republic, where he continued to personally file clients' tax returns. To be sure, the government's evidence of Jimenez's

14

continued participation in the conspiracy was largely circumstantial; however, "[b]oth the existence of a conspiracy and a given defendant's participation in it with the requisite knowledge and criminal intent may be established through circumstantial evidence." *United States v. Stewart*, 485 F.3d 666, 671 (2d Cir. 2007).

In any event, even if Jimenez had ceased participating in the conspiracy by late 2013 (which was before the beginning of the limitations period), as he claims, the government presented evidence that Jimenez continued to "receive . . . additional benefits from the conspiracy." *Berger*, 224 F.3d at 118. For example, in 2014, Jimenez opened new corporate bank accounts for his tax business, which received hundreds of thousands of dollars in deposits, mostly stemming from tax preparation fees. According to Nunez's testimony, Jimenez's business typically charged clients who requested false dependents higher tax preparation fees than other clients. The government also offered evidence that Jimenez continued to use the proceeds from the tax business for his benefit, such as when he withdrew $451,000 in April 2014 to purchase real estate. Based on these records and various other evidence the government presented, a reasonable juror could conclude that Jimenez continued using proceeds from the tax fraud and identity theft scheme to his benefit, and thus did not effectively withdraw from the conspiracy.

Therefore, we reject Jimenez's argument that the government's evidence of conspiracy is insufficient based on his alleged withdrawal from the conspiracy.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of conviction.

15