

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-22-2002

# USA v. DePaoli

Precedential or Non-Precedential: Non-Precedential

Docket No. 00-2212

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. DePaoli" (2002). *2002 Decisions.* Paper 423.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/423

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 00-2212, 00-2238,
00-2422, and 00-2427


UNITED STATES OF AMERICA

v.

ROSEMARY DEPAOLI,

                         Appellant in No. 00-2212


UNITED STATES OF AMERICA

v.

FRANK KRESOCK,

                              Appellant in No. 00-2238


UNITED STATES OF AMERICA

                              Appellant in No. 00-2422

            v.

FRANK KRESOCK


UNITED STATES OF AMERICA,

                              Appellant in No. 00-2427

            v.

ROSEMARY DEPAOLI


On Appeal from the United States District Court
    for the Middle District of Pennsylvania
D.C. Crim. Nos. 99-cr-00026-1 and 99-cr-00026-2
Honorable James F. McClure, Jr., District Judge


Argued July 11, 2002

BEFORE: SCIRICA and GREENBERG, Circuit Judges,
        and FULLAM, District Judge*

(Filed: July 22, 2002)


Martin C. Carlson
United States Attorney

William S. Houser (argued)
Assistant U.S. Attorney
U.S. Attorney's Office
Suite 309, Federal Building
Scranton, PA 18501

    Attorneys for Appellee-Cross-Appellant
    United States of America

Peter Goldberger (argued)
Pamela A. Wilk
50 Rittenhouse Place
Ardmore, PA 19003-2276

    Attorneys for Appellant-Cross-Appellee
    Rosemary DePaoli

*Honorable John P. Fullam, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Peter T. Campana
Campana & Lovecchio, LLP
602 Pine Street
Williamsport, PA 17701

    Attorneys for Appellant-Cross-Appellee
    Frank Kresock

OPINION OF THE COURT

GREENBERG, Circuit Judge.

## I. BACKGROUND & PROCEDURAL HISTORY

This criminal case is before the court on appeal and cross-appeal from judgments of conviction and sentence. A grand jury returned a nine-count indictment charging husband and wife defendants Frank Kresock and Rosemary DePaoli with income tax evasion and related charges. In particular, the indictment charged each defendant with three counts of income tax evasion, in violation of 26 U.S.C. 7201, relating to their joint personal income tax returns for years 1992, 1993 and 1994, DePaoli with filing false corporate income tax returns for the same three years, in violation of 26 U.S.C. 7206(1), and Kresock with aiding and abetting the filing of the false corporate returns, in violation of 26 U.S.C. 7206(2).

Appellants are medical doctors: Kresock is a cardiologist and DePaoli is a dermatologist. In 1988, they formed Columbia Medical Group, Inc. "CMG," a medical corporation. Each appellant owned one-half of the shares in CMG and both acted as the corporation's employees, lessors and creditors. William J. Roll, CPA, acted as their accountant and designed CMG's accounting procedures. The system provided for appellants to use checks and check stubs, adding expense codes, to record CMG's income and expenses. Appellants' practice was to send their accountant copies of the corporate check stubs, bank statements, and payroll information monthly.

In 1995, a routine IRS audit of CMG's 1993 corporate tax return led to a criminal investigation and ultimately the indictments and convictions involved here. The evidence at trial showed, inter alia, that appellants used CMG funds to purchase thousands of dollars worth of guns and jewelry, which were coded as "office supplies." Appellants also purchased numerous vehicles, including a Ferrari Testarossa and Harley Davidson motorcycles, with corporate funds. Additionally they used CMG funds to

renovate their vacation home, purchase jewelry, gold coins and many other personal items and services, including child care, home furnishings, groceries, diapers, children's toys, tampons and mustache wax. Many of Kresock's receipts were altered. Appellants did not declare the personal expenses they paid for with CMG funds as income on their personal tax returns. Instead the expenses frequently were treated as business-related items on CMG's corporate returns.

Evidence showed that appellants took steps to conceal the personal nature of the corporation's expenditures by falsely coding the check stubs to make the expenses appear business related. As an example, the purchase of a Harley Davidson motorcycle was coded as "equipment rental" for a cardiac echo machine. Defendants also omitted income on their personal tax returns from other sources, including fees from speaking engagements and for work performed at Bloomsburg Hospital. Overall the evidence of the appellants' guilt was overwhelming and, indeed, they understandably do not contend that the verdicts were against the weight of the evidence.

At the trial in the district court, the jury returned a verdict of guilty as to both appellants on all charges. The court sentenced Kresock to serve 20-month concurrent custodial terms to be followed by three-year concurrent terms of supervised release and DePaoli to serve 16-month current custodial terms to be followed by three-year concurrent terms of supervised release. DePaoli was to commence her custodial term when Kresock was released from imprisonment. The appellants have appealed and the United States has cross-appealed from the judgments insofar as they imposed sentences.

## II. DISCUSSION

Appellants first contend that the district court erred in denying their pretrial motions for bills of particulars. We consider this point on an abuse of discretion basis. See United States v. Eufrasio, 935 F.2d 553, 575 (3d Cir. 1991).

The purpose of a bill of particulars is to inform the defendant of the nature of the charges against him. See United States v. Addonizio, 451 F.2d 49, 63 (3d Cir. 1971). It is not intended to be a discovery device. See United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985). Thus, its purpose is to give the defendant only the information necessary to permit him to conduct his own investigation. See id. A trial judge has broad discretion in considering a motion for a bill of particulars, but the court should grant a motion seeking a bill of particulars when an indictment's failure to provide factual or legal information "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989).

In this case, the indictment sufficiently informed the appellants of the nature of the charges against them, and provided them with sufficient information to prepare an adequate defense and avoid prejudicial surprise at trial. For example, broken down by the years 1992, 1993, and 1994, the indictment charged appellants with income tax evasion, subscribing to a false tax return, and aiding and assisting the preparation of a false tax return. Furthermore, the government provided appellants with considerable pretrial discovery and explained its theories of the case in writing in advance. In the circumstances, we are satisfied that appellants understood the nature of and, indeed, had considerable details of the charges against them. Accordingly, we cannot say that the court erred in denying the motions for a bill of particulars.

Appellants argue that the jury instruction on the elements of income tax evasion was unclear and permitted personal income tax evasion convictions for acts not charged in the indictment. Inasmuch as appellants did not object to the instructions during the charging conference or when the instruction was given, we consider this contention on a plain error basis. See Fed. R. Crim. P. 52(b); United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir. 1983).

The appellants' particular objection is that the instructions failed to specify that the jury to convict was required to find that they knowingly filed personal tax returns each year which understated their joint taxable income. They argue that the jury instructions broadened the possible bases of conviction beyond that charged in the indictment. In support of their argument, appellants quote a small portion of the charge in which the court stated that the appellants' tax evasion was attempted:

by filing and causing to be filed . . . a false and fraudulent joint U.S. individual income tax return . . . wherein it was stated that their joint

> taxable income for [1992] was the sum of $519,357 . . . whereas . . .
> [they knew the correct figure] was substantially in excess of that . . . and
> that upon said additional joint taxable income a substantial additional
> tax was due.

App. at 290-91. Appellants complain that this instruction was ambiguous and that the jury may not have known that it was to "focus exclusively on the omission of income from the personal returns as the 'act of evasion.'" Appellants' Jt. Reply Br. at 4. Appellants point out that the record was "replete" with testimony about their conduct that the jury could have viewed as affirmative acts undertaken with the intent of tax evasion. They complain that nothing in the jury charge told the jury that it could convict on the personal evasion counts only if it found that they had attempted to evade income taxes by filing what they knew to be a false personal return which omitted income. This omitted income includes the imputed income appellants derived from the value of CMG's funds that were incurred for their personal benefit. See Appellants' Br. at 40.

We reject this contention as we are satisfied that the ambiguity of which appellants complain is not real and we see no reason to believe that the jury failed to understand that to convict it had to find beyond a reasonable doubt that appellants knowingly filed personal tax returns that understated their joint taxable income. We cannot believe that the jury, when it considered the charge, did not understand the elements of the offenses involved here.

Appellants claim that the court's charge to the jury on "willfulness" and "good faith" confused the jury into applying the "objective reasonableness" approach prohibited by Cheek v. United States, 498 U.S. 192, 111 S.Ct. 604 (1991). We review the instructions on this point on a plenary basis for legal correctness but on an abuse of discretion basis on matters of phrasing. See United States v. Zehrbach, 47 F.3d 1252, 1260 (3d Cir. 1995). Here we are satisfied that viewed in its entirety the court's charge on "willfulness" and "good faith" left no doubt that the defense of "good faith" need not be objectively reasonable. Moreover, the instructions clearly set forth that the burden of proving willfulness rested with the government.

With regard to willfulness, the district court stated in part:

> [T]he government must prove beyond a reasonable doubt that each
> defendant acted willfully. To act willfully means to act voluntarily and
> deliberately and intending to violate a known legal duty. . . . The word
> willfully as used in these instructions means a voluntary intentional
> violation of a known legal duty, in other words, the defendant must have
> acted voluntarily and intentionally with the specific intent to do
> something he or she knew the law prohibited, that is to say with intent
> either to disobey or to disregard the law.

App. at 298-300.

With regard to the "good faith" defense, appellants argue that the district court led the jury to believe that it was their burden to show good faith and that their belief must have been objectively reasonable. Appellants contend that the court's statement that "[i]f a person acts without reasonable grounds for belief that his or her conduct is lawful, it is for the jury to decide whether that person has acted in good faith . . ." violated Unite States v. Powell, 955 F.2d 1206 (9th Cir. 1991).

The district court stated:

> Now, the good faith of a defendant is a complete defense to
> the tax charges in the indictment because good faith is simply
> inconsistent with willfully attempting to evade or defeat any tax,
> subscribing to a false return or aiding and assisting the preparation of a
> false tax return.
>
> While the term good faith has no precise definition, it
> means, among other things, an honest belief, a lack of malice, and the
> intent to perform all lawful obligations. A person who acts on a belief
> or on an opinion honestly held is not punishable under this statute
> merely because that honest belief is unreasonable or turns out to be
> incorrect or wrong. . . . If a person acts without reasonable grounds for

belief that his or her conduct is lawful, it is for the jury to decide whether that person has acted in good faith in order to comply with the law or whether that person has willfully attempted to evade or defeat the tax, subscribed to a false return, or aid and assist the preparation of a false tax return.

A person who believes that his or her tax return truthfully reports the taxable income and allowable deductions under the tax law acts in good faith and cannot be found guilty of willfully committing the offenses charged in the indictment. . . .   The burden of proving good faith does not rest with the defendants because the defendants have no obligation to prove anything to you.  The government has the burden of proving to you beyond a reasonable doubt that each defendant acted willfully.

App. at 301-04.  In context, the court's instructions on willfulness and good faith did not mislead the jury as to the burden of proof and did not lead the jury into believing that the "good faith" defense required appellants to have an objectively reasonable belief in the propriety of their actions.  Thus, the court's charge captures both the spirit and the letter of the law as set forth in Cheek and is not contrary to Powell.

Appellants unsuccessfully sought jury instructions to the effect that corporate expenditures for the benefit of shareholders are not treated as personal income until they exceed in amount all outstanding shareholder loans to the corporation and that a corporation cannot generate dividend income in the absence of earnings and profits.  See United States v. D'Agostino, 145 F.3d 69 (2d Cir. 1989).  Appellants assert that their receipt of benefits from CMG would not be taxable if those benefits served to reduce the principal amount of a loan balance outstanding.  See Appellants' Jt. Reply Br. at 6.  They add that their intent, no matter how subjectively fraudulent, cannot create liability if they did not receive income but instead were repaid for their loans.  See id.  Appellants contend that the D'Agostino instruction was necessary to show that there was no deficiency in tax and that the instruction they request would not have been contrary to our opinion in United States v. Goldberg, 330 F.2d 30, 38 (3d Cir. 1964).  We review a refusal to give a requested instruction on an abuse of discretion basis, evaluating "whether the proffered instruction was legally correct, whether or not it was substantially covered by other instructions, and whether its omission prejudiced the defendant." United States v. Pitt, 193 F.3d 751, 755-56 (3d Cir. 1999).

In Goldberg, we noted that the government need not fix a precise label on diverted funds since "substance controls over form, and taxation is concerned with the actual command over the property taxed."  Id. at 38.  A number of other courts have agreed that the government need not prove the character of diverted funds, rejecting the D'Agostino rationale.  See United States v. Williams, 875 F.2d 846, 849-52 (11th Cir. 1989); United States v. Miller, 545 F.2d 1204, 1213-14 (9th Cir. 1976); Davis v. United States, 226 F.2d 331, 335-36 (6th Cir. 1955).  These courts have stressed the distinction between a civil collection action and a criminal tax proceeding by noting that:

In civil tax cases the purpose is tax collection and the key issue is the establishment of the amount of tax owed by the taxpayer.  In a criminal tax proceeding the concern is not over the type or the specific amount of tax which the defendant has evaded, but whether he has wilfully attempted to evade the payment or assessment of tax.

The difficulty in automatically applying the constructive distribution rules in this case is that it completely ignores one essential element of the crime charged: the willful attempt to evade taxes, and concentrates solely on the nature of the funds diverted.  That latter aspect is not the important element.  Where the taxpayer has sought to conceal income by filing a false return, he has violated the tax evasion statutes.

Miller, 545 F.2d at 1214; see also Williams, 875 F.2d at 850.  Indeed, the Court of Appeals for the Second Circuit has acknowledged that its view in D'Agostino does not

state the prevailing rule.  See United States v. Bok, 156 F.3d 157, 162 (2d Cir. 1998).

We also point out that in D'Agostino, unlike in this case, the government conceded that the defendant's corporation had no earnings or profits.  Here, there was evidence supporting a conclusion that, when adjustments were made for personal items falsely labeled as business expenses, CMG showed a profit for each year charged in the indictment.  Additionally, even though appellants complain that the diverted funds could have been accounted for lawfully as return of capital or repayment of a loan and that there would have been no or very little taxable income if corporate income diverted by appellants had been accounted for by issuance of 1099 forms, there was no evidence from which it could be inferred that the diverted income was accounted for in this way.  Accordingly, we will not stray from Goldberg, which requires the government to prove the taxpayer's "actual command" over the property taxed rather than fix a precise label or prove the character of the diverted funds.

Appellant Kresock filed a motion to recuse the district judge, who, during the pretrial conference, revealed to counsel that he and William Roll, appellants' CPA, belonged to the same church and were involved in church activities.  We consider the appeal from the court's denial of the motion on an abuse of discretion basis.  See Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir. 2000).

Under 28 U.S.C.   455:

(a)      Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b)      [The judge] shall also disqualify himself in the following circumstances:

(1)  Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

In considering this issue we determine whether an objective observer reasonably might question the judge's impartiality.  See Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997).  In its opinion declining to recuse the court noted, quoting Hadler v. Union Bank and Trust Co., 765 F. Supp. 976, 977 (S.D. Ind. 1991) (internal quotation marks omitted) that "it is beyond the bounds of reasonable supposition to infer that a judge would abandon his obligation of impartiality merely because a friend is a witness in a case in which that judge is presiding.  That is why practically every federal court faced with arguments for recusal based on friendship has found recusal unnecessary."  App. at 22.  In this case, the judge and the witness did not have a close personal relationship.  Instead, the judge merely was acquainted with the witness through church involvement.  Moreover, we see no reason to believe that the judge's acquaintance with the witness affected the outcome of sentencing.  Indeed, we note that neither appellant has appealed from his or her sentence, which, considering the situation in which they were in, were favorable to them.  In fact, it is the government which is appealing from the sentences.  Overall, we are satisfied that the district court properly denied the motion to recuse.

Appellants argue that the court committed plain error in allowing testimony from IRS agent Christopher Roginsky who was a summary witness who observed the trial and testified as to the amount of criminal tax due and owing from the defendants based on the evidence.  See Fed. R. Crim. P. 52(b).  Appellants argue that they received inadequate pretrial notice of Roginsky's testimony and that his testimony violated Fed. R. Evid. 704(b).

Before trial, appellants filed an unsuccessful motion under Rule 16(d)(2)  to exclude Roginsky's testimony to the extent that he proposed to testify as an expert on tax preparation.  The government, however, identified Roginsky as a summary witness who would offer a summary of tax calculations at the end of the government's case, based on the evidence presented at trial.  Appellants complain that Roginsky's testimony went beyond his role as a summary witness when he offered expert opinion on their intent to avoid taxes.

On cross-examination appellants tried to create the impression that there would

have been no corporate tax due and owing if their accountant simply had issued form 1099s to appellants on behalf of the corporation. Thus, the line of questioning suggested that corporate profit, and appellants' resulting liability, were consequences of the accountant's error. On redirect examination, the government asked the following questions to rebut the suggestion that the accountant was responsible for creating corporate profit:

> Q:      Now, Mr. Borden asked you a couple of questions about if there had been 1099's issued and if things had been done a certain way what the effect would have been on the corporate tax; is that correct?
>
> A:      Yes, I remember those questions.
>
> Q:      Why is it that you calculated a corporate tax due and owing in this case?
>
> A:      The items which comprised the corporate adjustments represent expenses that are not business expenses. They were expenses   personal expenses related to the shareholder, nonbusiness items. Had the shareholders had the intention of deducting them as business expenses, they would have been   wait, let me step back. Had they been legitimate business expenses they would have been allowed. Had the shareholders' intention been otherwise, that was additional compensation, they would have followed that route when they were coding the checks, placing them in the general ledger, et cetera.
>
> Q:      Okay, and that wasn't done here, correct.
>
> A:      No, it was not.

Supp. app. at 492-93.

Although they did not object at the time, appellants now contend that Roginsky's answer was highly prejudicial and that he improperly expressed an opinion as to their intent. See Appellants' Br. at 74 (citing United States v. Watson, 260 F.3d 301, 308 (3d Cir. 2001) for proposition that reversal is required when expert offers opinion about defendant's intention). The government responds that in the disputed testimony, Roginsky merely stated that appellants' treatment of the funds from CMG was inconsistent with an intention to consider those payments to be compensation as appellants had suggested, and that the opinion was not tantamount to an opinion regarding appellants' willfulness to evade income taxes. In any event, it points out that Roginsky's testimony covers 75 transcript pages and that the challenged testimony was not repeated.

In fact, from the start of Roginsky's testimony, the government made clear that he had been asked to assume that expenses paid by CMG to appellants were personal rather than business expenses. The fact that he began with this assumption and that his testimony was not intended to prove the intent of appellants was repeated throughout his testimony. See Br. of Appellant/Cross-Appellee at 71-73 (citing pages of transcript). Thus, even if a single, isolated portion of the agent's testimony was improper, it would not require reversal.

To reverse a conviction under Rule 52(b), plain error must affect substantial rights. See United States v. Olano, 507 U.S. 725, 735, 113 S.Ct. 1770, 1778 (1993). The appellant bears the burden of persuasion, and "[i]n most cases," the substantial rights requirement "means that the error must have been prejudicial: [i]t must have affected the outcome of the district court proceedings." Id. at 734, 113 S.Ct. at 1778. Here, the testimony was a brief statement in the midst of lengthy testimony and the agent's statements did not directly address appellants' intention to evade the payment of income taxes. In the circumstances, it is difficult to characterize the error as plain.

Moreover, even if the error was plain, there has been no specific showing of prejudice. We cannot believe that in the face of the overwhelming evidence supporting

the convictions that the statement affected the outcome of the trial.  Thus, appellants are not entitled to a new trial: the alleged error was not of constitutional dimension, and there is a "high probability" that the error did not contribute to the conviction.  See United States v. Molina-Guevara, 96 F.3d 698, 703 (3d Cir. 1996).  The error was harmless.

### III. CONCLUSION

We have reviewed all the other points raised by the parties, including those the government has advanced on the cross-appeal, and we are satisfied that we have no basis to reverse by reason of any of them.  Consequently, we will affirm the judgments of conviction and sentence entered July 20, 2000.

TO THE CLERK:

Please file the foregoing opinion.

/s/ Morton I. Greenberg

Circuit Judge

DATED:  July 22, 2002